IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. ORLY TAITZ, ESQ., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.  3:12-cv-03251-P |
| | § | |
| KATHLEEN SEBELIUS, Secretary, | § | |
| Health and Human Services, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### FEDERAL GOVERNMENT DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY/PRELIMINARY INJUNCTION

Dated:  September 20, 2012.

STUART F. DELERY
Acting Assistant Attorney General

SHEILA M. LIEBER
Deputy Director, Federal Programs Branch

SCOTT RISNER (MI Bar #P70762)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-2395
Facsimile:  (202) 616-8470
E-mail: scott.risner@usdoj.gov

Attorneys for Federal Government Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

    I.      The Affordable Care Act ...............................................................................2

    II.     A Partial History of Similar Cases Brought By Taitz ...............................................4

LEGAL STANDARD ...........................................................................................................6

ARGUMENT .....................................................................................................................6

I.      The Court Lacks Jurisdiction Over Taitz's Challenges to the ACA Because She
        Lacks Standing ..................................................................................................7

II.     Taitz Fails to Establish Venue in This District ...................................................8

III.    Even if Jurisdiction Exists and Venue Is Proper, Taitz Has Not Shown a Likelihood
        of Success on the Merits, as She Fails to State a Claim Upon Which Relief May Be
        Granted ........................................................................................................10

    A.      Taitz's Challenges to the Minimum Coverage Provision Are Meritless ..............10

         1.      Taitz's Understanding of the ACA Is Flawed ...........................................10

         2.      The Minimum Coverage Provision Does Not Violate the First, Fifth,
               or Fourteenth Amendments .........................................................................11

         3.      Taitz Has Not Shown That She Is Likely to Succeed on the
               Remaining Claims Raised In Her Motion ..................................................15

IV.    Taitz Has Not Shown That She Is Likely to Suffer Irreparable Harm Absent
        Preliminary Relief ...........................................................................................17

V.     The Balance of the Equities and the Public Interest Weigh Strongly Against
        Granting Preliminary Relief ..............................................................................18

VI.    Taitz's Remaining Claims Should Also Be Dismissed ......................................19

    A.      The Court Lacks Jurisdiction Over Taitz's Challenge to the President's
           Eligibility to Sign the ACA ............................................................................19

    B.      Taitz's RICO Claim Should Be Dismissed As Duplicative and Without Merit....21

1.  Taitz Is Already Litigating A Virtually Identical Claim in Another
    Court .................................................................................................22

2.  Taitz's RICO Claim Is Wholly Without Merit, As She Fails to Allege
    Basic Required Elements of a Viable Claim..............................................23

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ......................................................... 22

*Baldwin v. Sebelius*,
    654 F.3d 877 (9th Cir. 2011) ......................................................... 7

*Bellow v. U.S. Dep't of Health & Human Servs.*,
    Case No. 1:10-cv-00165, 2011 WL 2462205 (E.D. Tex. June 20, 2011).......................... 8

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009)............................................................ 20

*Bethel Baptist Church v. United States*,
    822 F.2d 1334 (3d Cir. 1897).......................................................... 15

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) ........................................................... 11

*Boyle v. United States*,
    556 U.S. 939 (2009)................................................................ 23, 24

*Chinn v. Giant Food, Inc.*,
    100 F. Supp. 2d 331 (D. Md. 2000) .................................................... 22

*Corp. of Presiding Bishop v. Amos*,
    483 U.S. 327 (1987).................................................................. 14

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005).................................................................. 12

*Drake v. Obama*,
    664 F.3d 774 (9th Cir. 2011) ....................................................... 5, 20

*Droz v. Comm'r*,
    48 F.3d 1120 (9th Cir. 1995) ............................................... 12, 13, 14, 15

*Elliott v. Foufas*,
    867 F.2d 877 (5th Cir. 1989) ......................................................... 23

*Engquist v. Or. Dep't of Agr.*,
    553 U.S. 591 (2008).................................................................. 14

*Fireman's Fund Ins. Co. v. Stites*,
    258 F.3d 1016 (9th Cir. 2001) ....................................................... 24

*Florida v. U.S. Dep't of Health & Human Servs.*,
    Case No. 3:10-cv-00091 (N.D. Fla.) ................................................ 6

*Gonannies, Inc. v. Groupair.com, Inc.*,
    464 F. Supp. 2d 603 (N.D. Tex. 2006) ........................................... 18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ....................................................................... 16

*Greater Dallas Home Care Alliance v. United States*,
    10 F. Supp. 2d 638 (N.D. Tex. 1998) ............................................. 19

*Hartsel Springs Ranch of Colo. v. Bluegreen Corp.*,
    296 F.3d 982 (10th Cir. 2002) ....................................................... 22

*Hatcher v. Comm'r*,
    688 F.2d 82 (10th Cir. 1979) ......................................................... 12

*Henson v. Comm'r*,
    66 T.C. 835 (1976) ......................................................................... 12

*Hobbie v. Unemployment Appeals Comm'n*,
    480 U.S. 136 (1987) ....................................................................... 12

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
    452 U.S. 264 (1981) ....................................................................... 13

*Hollander v. McCain*,
    566 F. Supp. 2d 63 (D.N.H. 2008) ................................................ 20

*Hunter v. Underwood*,
    471 U.S. 222 (1985) ....................................................................... 14

*Jaggard v. Comm'r*,
    582 F.2d 1189 (8th Cir. 1978) ....................................................... 12

*Jenkins v. Comm'r*,
    483 F.3d 90 (2d Cir. 2007) ............................................................ 13

*Jones v. Enterprise Rent A Car Co. of Tex.*,
    187 F. Supp. 2d 670 (S.D. Tex. 2002) ........................................... 24

*Liberty Univ., Inc. v. Geithner*,
  753 F. Supp. 2d 611 (W.D. Va. 2010), *rev'd on other grounds*, 671 F.3d 391 (4th
  Cir. 2011), *abrogated by NFIB v. Sebelius*, 132 S. Ct. 2566 (2012) ........................ 12, 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 7, 20

*Kellogg Co. v. Mattox*,
  763 F. Supp. 1369 (N.D. Tex. 1991) ........................................................................ 18

*Kerchner v. Obama*,
  669 F. Supp. 2d 477 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3d Cir. 2010) ........................ 21

*McCaskey v. Cont'l Airlines, Inc.*,
  133 F. Supp. 2d 514 (S.D. Tex. 2001) ........................................................................ 9

*Mead v. Holder*,
  766 F. Supp. 2d 16 (D.D.C. 2011), *aff'd, Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir.
  2011) ........................................................................................................................ 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  132 S. Ct. 2566 (2012) ............................................................................................. 4

*Newland v. Sebelius*,
  __ F. Supp. 2d __, 2012 WL 3069154 (D. Colo. July 27, 2012) ............................... 16, 17

*Nixon v. United States*,
  938 F.2d 239 (D.C. Cir. 1991), *aff'd*, 506 U.S. 224 (1992) ........................................... 21

*Olsen v. Comm'r*,
  709 F.2d 278 (4th Cir. 1983) .................................................................................... 12

*Public Citizen, Inc. v. Bomer*,
  274 F.3d 212 (5th Cir. 2001) ..................................................................................... 8

*Rhodes v. MacDonald*,
  Case No. 4:09-cv-00106, 2009 WL 2997605 (M.D. Ga. Sept. 16, 2009) ........................ 5

  Case No. 4:09-cv-00106, 2009 WL 3111834 (M.D. Ga. Sept. 18, 2009) ........................ 5

  386 Fed. Appx. 949 (11th Cir. 2010) .......................................................................... 5

*Sibley v. Obama*,
  __ F. Supp. 2d __, 2012 WL 2016809 (D.D.C. June 6, 2012) ........................................ 20

*Taitz v. Democrat Party of Mississippi*,
    Case No. 3:12-cv-00280 (S.D. Miss.).............................................................. 22

*Taitz v. Obama*,
    707 F. Supp. 2d 1 (D.D.C. 2010) ..................................................... 1, 5, 20, 23

*Taitz v. Ruemmler*,
    Case No. 11-cv-1421, 2011 WL 4916936 (D.D.C. Oct. 17, 2011) ................................... 4

*Taitz v. Sebelius*,
    Case No. 8:12-cv-01092 (N.D. Cal.) ...................................................................... 4

*Templeton v. Comm'r*,
    719 F.2d 1408 (7th Cir. 1983) ........................................................................... 15

*Texas v. United States*,
    523 U.S. 296 (1998)........................................................................................... 8

*Thomas v. Union Carbide Agr. Prods. Co.*,
    473 U.S. 568 (1985)........................................................................................... 8

*United States v. Lee*,
    455 U.S. 252 (1982).................................................................................... 12, 13

*Varga v. United States*,
    467 F. Supp. 1113 (D. Md. 1979), *aff'd*, 618 F.2d 106 (4th Cir. 1980) ................. 4, 11, 12

*Walters v. Holder*,
    Case No. 2:10-cv-0076, 2012 WL 3644816 (S.D. Miss. Aug. 23, 2012).......................... 7

*Ward v. Comm'r*,
    608 F.2d 599 (5th Cir. 1979) ............................................................................ 15

*Washington v. Davis*,
    426 U.S. 229 (1976)......................................................................................... 14

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)......................................................................................... 18

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................ 6, 18

*WMATA v. Ragonese*,
    617 F.2d 828 (D.C. Cir. 1980) .......................................................................... 22

## OTHER MATERIALS

U.S. Const., art. II, § 1, cl. 2 ..................................................................................... 21

U.S. Const., amend. XX, § 3 ...................................................................................... 21

18 U.S.C. § 1962 ........................................................................................................ 23

18 U.S.C. § 1964 ............................................................................................. 23, 24, 25

26 U.S.C. § 1402 ................................................................................................. *passim*

26 U.S.C. § 5000A .............................................................................................. *passim*

28 U.S.C. § 1391 .......................................................................................................... 9

Health Care and Education Reconciliation Act of 2010,
    Pub. L. No. 111-152, 124 Stat. 1029 (2010) ...................................................... 2

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010) .................................... 2, 19

S. Rep. No. 89-404 (1965) ........................................................................................... 4

## INTRODUCTION

Plaintiff Orly Taitz brings this suit to challenge the minimum coverage provision of the Patient Protection and Affordable Care Act ("ACA") based on her unfounded belief that the law categorically exempts Muslims from its scope. Her understanding of the law is wrong, as should be clear from her inability to cite any provision of the statute even referencing Islam, Judaism, or Christianity. To that argument, she adds the latest in her series of ill-conceived claims that President Obama is not a "natural born citizen" as required by the Constitution to serve as President, and a far-reaching claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") that she is already pursuing in other courts.

The Court need not, and should not, reach the lack of legal substance behind her claims. Instead, the Court should dismiss her claims for lack of standing. The minimum coverage provision does not take effect until 2014, and Taitz cannot possibly be subject to a tax penalty under the provision until she pays taxes in 2015. While Taitz asks the Court to enjoin the provision's operation against her, she never even indicates whether she currently has insurance, let alone whether she will be subject to the provision when it takes effect. Such a generalized claim provides no basis for standing to challenge the provision. *See Walters v. Holder*, Case No. 2:10-cv-0076, 2012 WL 3644816, at *3 (S.D. Miss. Aug. 23, 2012) (dismissing challenge for lack of standing when the record "contains no evidence that [plaintiffs] are or will be affected by the" minimum coverage provision). As another court has already found, Taitz also lacks standing to raise this type of generalized grievance against the President for his enactment of the ACA. *See Taitz v. Obama*, 707 F. Supp. 2d 1, 4 (D.D.C. 2010).

In addition to her failure to establish standing, Taitz also fails to show that venue is proper in this district. As the Court has noted, Taitz's complaint contends that venue is proper

"because several plaintiffs live in Orange County within the Southern Division of the Central District of California."  Compl. 6.  Of course, such allegations cannot establish venue in the Northern District of Texas.

These are but a few of the deficiencies in Taitz's complaint.  Even if the Court looks past standing and venue, her complaint suffers other jurisdictional flaws and fails to state any actionable claim.  Nonetheless, Taitz asks this Court to enter the extraordinary relief of a preliminary injunction against an act of Congress, despite her failure to show any chance of success on the merits or even a remote possibility that she will suffer irreparable harm absent an injunction.  For the reasons outlined below, the Federal Government Defendants ask that her motion be denied and her complaint be dismissed.

## BACKGROUND

### I.      The Affordable Care Act

On March 23, 2010, President Obama signed into law the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010).[2]  At issue in this case is the minimum coverage provision, which provides that, beginning in 2014, those individuals not otherwise exempt who do not obtain "minimum essential coverage" for a given year must pay a penalty.  26 U.S.C. § 5000A(a), (b)(1).  In general, the penalty is calculated as the greater of a fixed amount or a percentage of the individual's household income, but it may not exceed the national average premium for the lowest-tier plans offered through health insurance Exchanges for the individual's family size.  *Id.* § 5000A(c)(1), (2). If the penalty applies, the individual must report it on his return for the taxable year, as an addition to his

---

[2] The ACA was amended on March 30, 2010, by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010).

income tax liability.[3]  *Id.* § 5000A(b)(2).  The penalty is assessed and collected in the same

manner as other penalties imposed by the Internal Revenue Code.  *Id.* § 5000A(g)(1).

Congress exempted certain individuals who cannot purchase health insurance for

religious reasons, as well as those who cannot afford insurance or who would suffer hardship if

required to purchase it.  *See id.* § 5000A(d), (e).  At issue in Taitz's complaint is the "religious

conscience" exemption, which exempts an individual who is "(i) a member of a recognized

religious sect or division thereof described in section 1402(g)(1), and (ii) an adherent of

established tenets or teachings of such sect or division as described in such section."[4]  *Id.*

§ 5000A(d)(2)(A).  The plain text of the exemption thus requires an individual to be a member of

a group described in section 1402(g)(1) of the Internal Revenue Code, 26 U.S.C. § 1402(g)(1).

That provision applies to an individual who is a member of, and adheres to the established tenets

of, a recognized religious sect or division thereof,

> by reason of which he is conscientiously opposed to acceptance of the benefits of
> any private or public insurance which makes payments in the event of death,
> disability, old-age, or retirement or makes payments toward the cost of, or provides
> services for, medical care (including the benefits of any insurance system
> established by the Social Security Act).

26 U.S.C. § 1402(g)(1).

Section 1402(g)(1) was not created by the ACA, but instead existed long before the Act

was passed.  Congress enacted the provision as part of the Social Security Amendments of 1965,

"primarily because religious sects like the Old Order Amish provided for their own needy,

---

[3] Individuals who are not required to file income tax returns for a given year are not subject to
the provision.  26 U.S.C. § 5000A(e)(2).

[4] A second religious exemption, the "health care sharing ministry" exemption, is not raised in
Taitz's complaint, but covers members of 501(c)(3) organizations that have been in existence
since December 31, 1999, whose members share a common set of ethical or religious beliefs,
share their medical expenses, and retain membership even after they develop a medical
condition.  *Id.* § 5000A(d)(2)(B).

independent of public or private insurance programs." *Varga v. United States*, 467 F. Supp.

1113, 1117 (D. Md. 1979) (citing S. Rep. No. 89-404, at 116 (1965)), *aff'd*, 618 F.2d 106 (4th

Cir. 1980).

On June 28, 2012, the Supreme Court upheld the constitutionality of the minimum

coverage provision.  *See Nat'l Fed'n of Indep. Bus. ("NFIB") v. Sebelius*, 132 S. Ct. 2566, 2601

("The Federal Government does have the power to impose a tax on those without health

insurance.  Section 5000A is therefore constitutional, because it can reasonably be read as a

tax.") (Roberts, C.J.); *id.* at 2609 ("I agree with the CHIEF JUSTICE . . . that the minimum

coverage provision is a proper exercise of Congress' taxing power.") (Ginsburg, J., concurring).

Taitz then filed suit in the Northern District of California on July 5, 2012.  *See Taitz v.

Sebelius*, Case No. 8:12-cv-01092 (N.D. Cal.).  On August 16, 2012, that court dismissed her

case without prejudice for lack of venue.  *See* Order attached as Ex. 1.  Taitz then re-filed her

complaint in this Court on August 23, 2012.  While she has yet to effect proper service on any of

the Federal Government Defendants – if any of the defendants at all – on August 30, 2012 she

moved for a preliminary injunction.  *See* Dkt. 7.

## II.    A Partial History of Similar Cases Brought By Taitz

Conspicuously missing from Taitz's complaint and motion is any account of the cases

she has previously brought to challenge the minimum coverage provision and/or the President's

eligibility to hold office.  As another court has recognized, Taitz has engaged in a "Sisyphean

quest to prove that Barack Obama is using a fake Social Security number and a forged birth

certificate."  *Taitz v. Ruemmler*, Case No. 11-cv-1421, 2011 WL 4916936, at *1 (D.D.C. Oct. 17,

2011).  As part of that quest, Taitz has raised such claims both on behalf of clients and in her

own name.  With the limited space available here, a few examples are particularly worth noting.

4

Most notably, this is not the first time Taitz has challenged the President's enactment of the ACA. At the time of the law's enactment, Taitz challenged, among other things, the President's eligibility to serve and to sign into law the ACA. *See Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010). On April 14, 2010, the court dismissed Taitz's claims. *Id.* Recognizing that a generalized grievance against a law does not constitute an injury in fact, the court found that "[t]his is precisely the sort of injury that Ms. Taitz alleges and as such she does not have standing to pursue her claim." *Id.* at 4.

Every other time Taitz has brought similar claims against the President, whether in her own name or on behalf of clients, the result has been dismissal. For example, the Ninth Circuit dismissed for lack of jurisdiction claims Taitz brought on behalf of forty-four plaintiffs concerning the President's eligibility for office. *See Drake v. Obama*, 664 F.3d 774, 778 (9th Cir. 2011). While Taitz was not herself a plaintiff in that action, the Ninth Circuit recognized that federal taxpayers like Taitz lacked standing to challenge the President's eligibility to hold office because such a "generalized grievance" is insufficient to confer standing under clear Supreme Court precedent. *Id.* at 781-82. Similarly, in Georgia, the district court dismissed claims brought by Taitz, finding that she had presented "no credible evidence and has made no reliable factual allegations to support her unsubstantiated, conclusory allegations and conjecture that President Obama is ineligible to serve as President of the United States." *Rhodes v. MacDonald*, Case No. 4:09-cv-00106, 2009 WL 2997605, at *3 (M.D. Ga. Sept. 16, 2009). *See also* 2009 WL 3111834 (M.D. Ga. Sept. 18, 2009) (sanctioning Taitz after finding that she had "ignor[e]d the Court's previous admonition that Plaintiff's counsel discontinue her illegitimate use of the federal judiciary to further her political agenda"); 386 Fed. Appx. 949 (11th Cir. 2010) (affirming imposition of monetary sanctions in the sum of $20,000).

5

Taitz is also currently pursuing similar claims in this circuit in *Taitz v. Democrat [sic] Party of Mississippi*, Case No. 3:12-cv-00280 (S.D. Miss.).  In that case, filed in state court in April 2012 and then removed to federal court, Taitz seeks to enjoin President Obama from appearing on the 2012 general election ballot in Mississippi on the grounds that he is ineligible to serve as President.  She also makes RICO claims largely identical to the claims in her complaint here, against a group of defendants with significant overlap to this case.

Finally, Taitz also sought to intervene in the Northern District of Florida in the case that the Supreme Court ultimately decided as *NFIB*.  *See Florida v. U.S. Dep't of Health & Human Servs.*, Case No. 3:10-cv-00091 (N.D. Fla.).  Taitz sought to intervene to assert her claims as to the President's legitimacy, and her motion was denied.  *See id.*, Dkt. 17, Dkt. 18.

## LEGAL STANDARD

With respect to her request for preliminary injunctive relief, Taitz must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.  The Federal Government Defendants ask the Court to deny the motion, and to dismiss the complaint for lack of subject matter jurisdiction, under Rule 12(b)(1); for improper venue, under Rule 12(b)(3); and for failure to state a claim upon which relief can be granted, under Rule 12(b)(6).

## ARGUMENT

Taitz asks this Court to enjoin the minimum coverage provision because – in her incorrect understanding of the law – adherents to Islam are categorically exempt from the law.

6

But Taitz does not come close to satisfying any of the requirements for injunctive relief. She lacks standing to raise her claims, she has failed to show that venue is proper in this district, and she is certain not to succeed on the merits. Her motion should be denied, and her claims should be dismissed with prejudice.

## I.     The Court Lacks Jurisdiction Over Taitz's Challenges to the ACA Because She Lacks Standing

To have standing to sue, a "plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations, quotation marks, and footnote omitted). Allegations of "an injury at some indefinite future time" do not show an injury in fact, particularly where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Id.* at 564 n.2. In these situations, "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.* The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Id.* at 573-74.

Taitz challenges the minimum coverage provision, but her allegations are insufficient to plead an injury-in-fact. Courts around the country have rejected challenges to the minimum coverage provision by individuals who have failed to make specific allegations of how the provision affects them. *See, e.g.*, *Baldwin v. Sebelius*, 654 F.3d 877, 878 (9th Cir. 2011) (dismissing challenge by an individual who "fail[ed] to allege that he does not have qualifying health insurance or that he will not have it in 2014"); *Walters v. Holder*, Case No. 2:10-cv-76,

7

2012 WL 3644816, at *3 (S.D. Miss. Aug. 23, 2012) (dismissing challenge for lack of standing when the record "contains no evidence that [plaintiffs] are or will be affected by the" minimum coverage provision); *Bellow v. U.S. Dep't of Health & Human Servs.*, Case No. 1:10-cv-165, 2011 WL 2462205, at *1 (E.D. Tex. June 20, 2011) (adopting magistrate's recommendation that case be dismissed given plaintiff's allegation only of a generalized grievance).

　　As in those cases, Taitz says nothing about her personal circumstances.  She does not indicate whether she currently has insurance, let alone allege that she will be non-compliant with the minimum coverage provision when it takes effect.  She also does not claim that she is presently required to change her behavior in any way in order to avoid the tax penalty in 2014.  By making no allegations about the law's effect on her as individual, Taitz has "done little more than present a generalized grievance, common to all citizens or litigants." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 219 (5th Cir. 2001).  Accordingly, Taitz's complaint does not provide a basis for standing, and her challenges to the minimum coverage provision should be dismissed.[5]

## II.　　Taitz Fails to Establish Venue in This District

　　If the Court looks past Taitz's lack of standing, she also fails to establish venue.  Taitz's complaint alleges that "[v]enue is proper under FOIA and 42 U.S.C. § 1988(a) because several plaintiffs live in Orange County within the Southern Division of the Central District of California."  Compl. 6.  Neither statute is applicable in this case, nor could residency in Orange County establish venue in the Northern District of Texas.

---

[5] For similar reasons, Taitz's challenges are not ripe for review.  By basing her claim on an injury that could not occur before 2014, and may not occur even then, Taitz relies on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580-81 (1985), and that do not cause a hardship with a "direct effect on the day-to-day business of the plaintiff[]," *Texas v. United States*, 523 U.S. 296, 301 (1998).

Even if Taitz were to rely on the pertinent federal law, venue would still be improper. Because several defendants are officers or employees of the United States acting in their official capacity, this suit could:

> be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  But because Taitz's suit also includes non-government defendants, she must satisfy the requirement that other individuals "may be joined as parties to any such action in in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party."  *Id.*

While section 1391(e)(1) could provide a basis for venue against the Federal Government Defendants, it does not permit suit in this district against any other defendant.  Taitz's complaint does not allege the residency of any individual defendant.  While Taitz responded to the Court's show cause order by stating that "defendant Chatfield resides in the Northern District of TX," *see* Dkt. 9 at 1, her filing offers no support for that claim, which is not even alleged in her complaint. *See also McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) (recognizing that, "[o]nce a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue," and that "the court should . . . accept uncontroverted facts *contained in plaintiff's complaint* as true") (emphasis added).  Moreover, Chatfield is apparently being sued for actions taken in his official capacity as director of the Selective Service, and thus the proper defendant should instead be the current director of the Selective Service, Lawrence G. Romo, who is not a resident of this district.  Taitz has not shown that venue is proper as to the non-federal defendants, and her complaint should be dismissed.

III.   **Even if Jurisdiction Exists and Venue is Proper, Taitz Has Not Shown a Likelihood of Success on the Merits, as She Fails to State a Claim Upon Which Relief May Be Granted**

If the Court looks to the merits, it should be clear that Taitz cannot succeed on any of her claims.  Taitz challenges a law that she either misunderstands or misrepresents, and even a cursory reading of the relevant provision – together with decades of case law interpreting it, none of it cited by Taitz – demonstrates that her claims are without merit.

### A.   Taitz's Challenges to the Minimum Coverage Provision Are Meritless

#### 1.   Taitz's Understanding of the ACA Is Flawed

Taitz contends that the minimum coverage provision violates her rights to equal protection, under the Fifth and Fourteenth Amendments, as well as her rights under the free exercise and establishment clauses of the First Amendment.  *See* Compl. ¶¶ 4-9, 11-15.  These claims share a flawed predicate: she wrongly asserts that the minimum coverage provision exempts adherents to Islam.  In her complaint, Tatiz selectively quotes from the text of the ACA's religious conscience exemption.  She quotes language in Section 5000A(d)(2)(A) that exempts certain members of "a recognized religious sect or division thereof," and proceeds to assert that "[a] religious sect or division being exempted is a Muslim sect or religion, which claims that any insurance is against their belief, as they see insurance as a form of usury. Consequently any Muslim is exempt from paying" the tax penalty.  Compl. ¶¶ 5-6.  Her assertion is wrong.  Not only does she offer no support for her claim that adherents to Islam categorically reject health insurance, Taitz relies on a selective quotation of the exemption's terms.  The religious conscience exemption covers only individuals who are members of "a recognized religious sect or division thereof *described in section 1402(g)(1)*."  *Compare* 26 U.S.C. § 5000A(d)(2)(A) *and* Compl. ¶ 5 (omitting italicized language).

10

Contrary to Taitz's argument, the exemption is thus limited by section 1402(g)(1) of the Internal Revenue Code, a longstanding provision that covers groups "conscientiously opposed to acceptance of the benefits of any private or public insurance." *See* 26 U.S.C. § 1402(g)(1). What Taitz sees as a law written to favor Muslims is instead a provision enacted by Congress in 1965 "primarily because religious sects like the Old Order Amish provided for their own needy, independent of public or private insurance programs." *Varga*, 467 F. Supp. at 1117.

While allegations in a complaint must typically be accepted as true for purposes of a Rule 12(b)(6) motion, that does not extend to allegations of law, particularly when those allegations are conclusory and wrong. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). While Taitz's assertion that adherents to Islam are categorically exempt from the minimum coverage provision is incorrect, it is also critical to her claims. For example, the entire premise of her equal protection challenge is that the ACA treats all Muslims differently than all Christians and all Jews. Because her flawed assertion is the foundation for her various challenges to the provision's constitutionality, it follows that her claims have no merit, and should be dismissed.

### 2. The Minimum Coverage Provision Does Not Violate the First, Fifth, or Fourteenth Amendments

The Court need go no further, as it is sufficient to dismiss Taitz's claims because of her flawed presentation of the law. If the Court does proceed, however, the religious conscience exemption is constitutional. While Taitz attacks the exemption's inclusion in the ACA, she appears not to recognize that the exemption is in fact a longstanding provision of the Internal Revenue Code, the constitutionality of which is well settled. Taitz's claim is not new, but instead rehashes arguments that have been rejected time and again by courts across the country.

11

*Establishment Clause & Free Exercise Clause:*  First, the religious conscience exemption is consistent with the First Amendment's religion clauses.  It is clear that Congress may accommodate conscientious objectors without running afoul of the Establishment Clause or the Free Exercise Clause.  The Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause."  *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144-45 (1987).  The religious conscience exemption is the type of accommodation that falls within the "corridor between the Religion Clauses."  *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

Recently, the exemption's inclusion in the ACA was upheld in *Liberty University, Inc. v. Geithner*, 753 F. Supp. 2d 611, 639 (W.D. Va. 2010), *rev'd on other grounds*, 671 F.3d 391 (4th Cir. 2011), *abrogated by NFIB*.  But the constitutionality of the exemption has long been clear. Since the exemption's enactment in the Internal Revenue Code in 1965, every federal court to consider the issue has upheld section 1402(g)(1) in the face of constitutional challenges.  *See United States v. Lee*, 455 U.S. 252, 261 (1982); Varga, 467 F. Supp. at 1118; *Droz v. Comm'r*, 48 F.3d 1120, 1124 (9th Cir. 1995); *Hatcher v. Comm'r*, 688 F.2d 82, 83-84 (10th Cir. 1979); *Jaggard v. Comm'r*, 582 F.2d 1189, 1190 (8th Cir. 1978); *Henson v. Comm'r*, 66 T.C. 835, 838 (1976).  These decisions are sound.  As the Supreme Court explained in *Lee*, the exemption in section 1402(g)(1) accommodates a "narrow category" that is "readily identifiable," 455 U.S. at 261, a determination that reflects Congress's conclusion that this limited "financial threat to the [social security] system is supportable," *Olsen v. Comm'r*, 709 F.2d 278, 281 (4th Cir. 1983). And section 1402(g)(1) applies neutrally to members of all faiths, *Cutter*, 544 U.S. at 722, as it singles out no particular religious sect, instead identifying a characteristic that cuts across denominations.  In other words, "Section 1402(g) does not discriminate among religions: it . . .

12

grants a religious exemption, provided that the individual belongs to an organization with its own welfare system." *Droz*, 48 F.3d at 1124.  In light of the fact that section 1402(g)(1) has been upheld under the Establishment Clause, this Court should not chart a different course with regard to a provision in the ACA that grants the same exemption described in section 1402(g)(1).

Taitz's claim under the Free Exercise Clause fares no better.  Here, too, the Supreme Court has rejected such a challenge to section 1402(g).  *See Lee*, 455 U.S. at 258.  It is "well settled that the collection of tax revenues for expenditures that offend the religious beliefs of individual taxpayers does not violate the Free Exercise Clause of the First Amendment." *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) (citing *Lee*).  The rationale supporting this principle is that "mandatory participation" in the payment of taxes is "indispensable to the fiscal vitality" and operation of the tax system in general and the social security system in particular, thus satisfying the compelling interest and least restrictive means tests under the Free Exercise Clause.  *See Lee*, 455 U.S. at 258.  The same principle applies to the national, mandatory application of a system of health insurance with religious accommodation provided by section 1402(g).  Without question, the minimum coverage provision's objectives – including promoting the public health – constitute a compelling government interest.  *See, e.g., Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981).  Thus, as with Social Security, "the Government's interest in assuring mandatory and continuous participation in and contribution to the [ACA] system" satisfies the Free Exercise Clause.  *Lee*, 455 U.S. at 258-59.

**Equal Protection Clause:**  Taitz also contends that the religious conscience exemption denies the equal protection of the laws guaranteed by the Fifth and Fourteenth Amendments. This argument is also without merit.  *See Liberty Univ., Inc.*, 753 F. Supp. 2d at 644-45 (rejecting equal protection challenge to ACA's religious conscience exemption).

13

Equal protection generally directs that all persons similarly situated shall be treated alike. *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602 (2008). But "[p]roof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Hunter v. Underwood*, 471 U.S. 222, 227-28 (1985); *Washington v. Davis*, 426 U.S. 229, 240 (1976) (neutral law does not violate Equal Protection Clause solely because it results in a disproportionate impact; instead, the impact must be traced to a purpose to discriminate). Absent evidence of discriminatory intent, courts generally will not find an equal protection violation.

There is no discriminatory intent or purpose behind the religious conscience exemption. Rather than discriminate among religions, the law "grants a religious exemption, provided that the individual belongs to an organization with its own welfare system" that provides for the health care needs of its members. *Droz*, 48 F.3d at 1124. The exemption does not single out a particular sect; instead, it identifies characteristics that cut across denominations. And it serves the valid secular purpose of alleviating governmental interference with religious exercise. *See Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 335 (1987) ("It is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious [adherents] to define and carry out their religious missions."). Heightened scrutiny therefore does not apply, and the exemption should be evaluated under the rational basis test. *Droz*, 48 F.3d at 1125.

As discussed above, the exemption is rationally related to a legitimate government objective, insofar as it accommodates the religious beliefs of individuals who very likely will not incur the uncompensated care and lead to the cost-shifting that Congress was concerned about.[6] Indeed, in the context of religious objections to paying Social Security taxes and receiving

---

[6] The fact that the exemption is textually limited to members of sects or divisions that provide for their own welfare not only underscores why Taitz is wrong about the law's operation, it also exposes as misguided her concerns that individuals subject to the minimum coverage provision will be required to pay the medical costs of individuals who are exempt due to their religion.

benefits, courts have consistently upheld section 1402(g) under rational basis review. *See Droz*, 48 F.3d at 1124-25; *Bethel Baptist Church v. United States*, 822 F.2d 1334, 1341-42 (3d Cir. 1987); *Templeton v. Comm'r*, 719 F.2d 1408, 1413-14 (7th Cir. 1983); *Ward v. Comm'r*, 608 F.2d 599, 601-02 (5th Cir. 1979). Taitz's equal protection claim should accordingly be rejected.

### 3. Taitz Has Not Shown That She Is Likely to Succeed on the Remaining Claims Raised In Her Motion

Taitz's motion for a preliminary injunction also contends that the religious conscience exemption violates her rights under RFRA and her First Amendment right to free speech. Neither of these claims was raised in her complaint, and thus neither provides a basis for her to obtain preliminary relief. Because the very purpose of a preliminary injunction is to preserve the parties' positions until a final resolution of the merits, it would be illogical to enter a preliminary injunction with respect to a claim that the plaintiff's complaint does not even seek to present.

If the Court considers Taitz's arguments with respect to RFRA and free speech, however, she still has not shown a likelihood of success on the merits of those claims.

*RFRA:* Taitz spends much of her motion arguing that the minimum coverage provision violates RFRA, but such a claim is patently without merit. RFRA generally forbids the government from imposing a substantial burden on the free exercise of religion, "even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). The government may, however, justify a substantial burden if the law "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." *Id.* § 2000bb-1(b).

Here, Taitz has not shown that she is subject to any substantial burden on the free exercise of her religion. Taitz makes no allegations about her religious beliefs or how the provision affects their exercise. *See Mead v. Holder*, 766 F. Supp. 2d 16, 42 (D.D.C. 2011)

(rejecting RFRA challenge to minimum coverage provision, as "Plaintiffs have failed to allege any facts demonstrating that [the provision] is more than a *de minimis* burden on their Christian faith")*, aff'd*, *Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011). As a result, strict scrutiny does not apply. *Id.* But even if it somehow did, Taitz still states no violation of RFRA. The minimum coverage provision is justified by a compelling government interest, and is the least restrictive means to achieve that interest. *See id.* at 43 (recognizing that "the Government clearly has a compelling interest in safeguarding the public health by regulating the healthcare and insurance markets" and that the minimum coverage provision "is the least restrictive means for furthering this compelling interest"). For the reasons discussed above, the religious conscience exemption has been carefully circumscribed.

Taitz's reliance on *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), does not show otherwise. There, a religious sect sought an exemption under the Controlled Substances Act for the use of *hoasca*, a hallucinogenic tea. The Court granted the exemption, reasoning that a well-established exception for peyote "fatally undermines the Government's broader contention that the Controlled Substances Act establishes a closed regulatory system that admits of no exceptions under RFRA." *Id.* at 434. The Court reasoned that "[e]verything the Government says about . . . *hoasca* . . . applies in equal measure to . . . peyote." *Id.* at 433. But unlike the peyote exemption, the minimum coverage provision's exemptions do not undermine the provision's purpose. The exemption here applies only to those who belong to groups that already provide for the health needs of their members; those people already receive care and do not impose the costs of uncompensated care on the rest of society.

Similarly, Taitz's reliance on *Newland v. Sebelius*, __ F. Supp. 2d __, 2012 WL 3069154 (D. Colo. July 27, 2012), is misplaced. *Newland* and this case share the superficial similarity of

16

involving challenges to the ACA.  But in *Newland*, a company and its owners/directors are challenging an unrelated provision of the ACA (along with its implementing regulations) that requires certain group health plans and health insurance issuers to provide coverage for certain recommended preventive services.  *See id.* at *1 (discussing 42 U.S.C. § 300gg-13(a)(4)).  The case has nothing to do with the minimum coverage provision.  While the district court has entered a preliminary injunction, it applies only to enforcement of the preventive care requirements at issue in that case, and it applies only to enforcement against the *Newland* plaintiffs.  *Id.* at *8-9.

*Free Speech:*  Finally, Taitz contends that the religious conscience exemption violates the First Amendment because, by "forc[ing] individuals to report to the government their religious affiliation in order to get an exemption," it compels speech.  Pl.'s Mot. 12.  Taitz spends just four sentences of her motion (and none of her complaint) on this meritless claim.  Preliminarily, she never even alleges that she could qualify for the exemption, and thus it is unclear how the law could possibly require her to "report" her religious affiliation to the government.  Moreover, requiring an individual to declare her eligibility for an exemption does not require her "to utter or distribute speech bearing a particular message," as Taitz suggests.  *See id.*  Just as Taitz cannot show that it is improper to accommodate individuals' religious beliefs, she also offers no support for the notion that individuals cannot required to communicate with the government in order to receive such an accommodation.

## IV.     Taitz Has Not Shown That She Is Likely to Suffer Irreparable Harm Absent Preliminary Relief

Taitz's inability to succeed on the merits of her claims necessarily means that she cannot obtain a preliminary injunction.  But her motion also fails because she cannot show, as she must, that she is "likely to suffer irreparable harm before a decision on the merits can be rendered."

*Winter*, 555 U.S. at 22.  Taitz alleges, at most, that she would be harmed if she were required to pay the tax penalty associated with the minimum coverage provision.  But such a tax would not be assessed or owed for several years, long after this case would be resolved.  In light of the purely legal nature of her claim, a final decision in this case should come relatively quickly, and in any case long before the provision at the heart of her complaint takes effect in 2014.  The supposed harm of paying a tax penalty is insufficient to establish standing, much less the irreparable harm required for a preliminary injunction.

Moreover, it is notable that Tatiz waited as long as she did to seek preliminary relief. The ACA was enacted more than two years ago.  Even giving Taitz the benefit of considering her earlier filing in the Central District of California, Taitz filed that complaint on July 5, 2012, and still waited more than a month before first seeking preliminary injunctive relief in that court. Such a delay merely underscores the lack of any irreparable harm that could result from the denial of her motion.  *See, e.g.*, *Gonannies, Inc. v. Groupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) ("Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.") (internal quotation omitted).

## V.    The Balance of the Equities and the Public Interest Weigh Strongly Against Granting Preliminary Relief

Taitz also cannot establish that either the balance of equities or the public interest weigh in her favor.  The Supreme Court has cautioned that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  "It is well established that the public interest may be declared in the form of a statute."  *Kellogg Co. v. Mattox*, 763 F. Supp. 1369, 1385 (N.D. Tex. 1991) (internal quotation and citation omitted).  The Court's assessment should

be constrained by the fact that the elected branches of government have enacted a statute based on their understanding of what the public interest requires. *See Greater Dallas Home Care Alliance v. United States*, 10 F. Supp. 2d 638, 650 (N.D. Tex. 1998) ("The Court's reluctance to overturn an act of Congress is even more profound [when asked to grant preliminary relief], for an injunction would impede Congressional intent prior to an adjudication on the merits.").

When it enacted the ACA, Congress determined that the Act would reduce the costs attributable to the poorer health and shorter life spans of the uninsured, lower health insurance premiums, improve financial security for families, and decrease the administrative costs of health care. Pub. L. No. 111-148, §§ 1501(a), 10106(a). Congress also determined that the minimum coverage provision is "essential" to achieving these results. *Id.* As millions of Americans struggle without health insurance, as medical expenses force them into personal bankruptcy, as the spiraling cost of health care encumbers the entire economy, it is not for plaintiff to second-guess these legislative judgments as to what the public interest requires.

For the reasons set forth above, Taitz's satisfies none of the requirements for preliminary relief, and her motion should be denied.

## VI.   Taitz's Remaining Claims Should Also Be Dismissed

In addition to the claims set forth in her motion for a preliminary injunction, Taitz's complaint raises two further claims: that the ACA was signed by a President ineligible to serve in that office, and that each of the defendants has engaged in a far-reaching conspiracy in violation of RICO. After denying Taitz's motion, the Court should dismiss these remaining claims.

### A.  The Court Lacks Jurisdiction Over Taitz's Challenge to the President's Eligibility to Sign the ACA

While Taitz's challenge to President Obama's eligibility to serve as president and to sign the ACA is wholly frivolous, the Court need not even consider the claim because Taitz fails to

establish jurisdiction.  As discussed above, Taitz must allege a "concrete and particularized" injury in order to establish standing.  *Lujan*, 504 U.S. at 560.  A generalized grievance common to all citizens cannot, by contrast, give rise to standing.  But as Chief Judge Lamberth of the District Court for the District of Columbia recognized when he dismissed an earlier challenge by Taitz to President Obama's eligibility to sign the ACA, a generalized grievance "is precisely the sort of injury that Ms. Taitz alleges and as such she does not have standing to pursue her claim."[7] *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010).  Here, too, Taitz has alleged no personal injury, and her claim should thus be dismissed for lack of jurisdiction.

Taitz's lack of standing is not, however, the only jurisdictional defect in her claim.  Her challenge to the President's eligibility also presents a non-justiciable political question that can be appropriately resolved only by other branches of government.  The political question doctrine serves to "restrain the Judiciary from inappropriate interference in the business of the other branches of Government" by prohibiting the courts from deciding issues that properly rest within the province of the political branches.  *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990).  If a dispute involves a non-justiciable political question, the proper course is dismissal.  *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948-49 (5th Cir. 2011).

Taitz's claim that the President is ineligible to serve is "barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department."

---

[7] Courts have repeatedly determined that individuals, including Taitz herself, lack standing to challenge the President's eligibility to serve.  *See, e.g., Drake*, 664 F.3d at 780-84 (rejecting standing for 44 plaintiffs, including military personnel, legislators, taxpayers, and candidates for the presidency); *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) (recognizing that a citizen's "stake in the legitimacy of [the] presidency is shared by . . . all 300 million-plus U.S. citizens"); *Sibley v. Obama*, 2012 WL 2016809, at *2 (D.D.C. June 6, 2012) (A write-in candidate for President in 2012, "lacks standing to challenge President Obama's current tenure in office, just as others who have made similar claims contesting President Obama's eligibility for the Presidency were found to lack standing."); *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008).

*Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3rd Cir. 2010).  The Constitution assigns issues related to a candidate's eligibility for the Office of President to the voters and to the Electoral College, the Constitutionally-created body responsible for selecting the President of the United States.  *See* U.S. Const., art. II, sect.1, cl. 2; *id.* at amend. XXIII § 1.  The examination of a candidate's qualifications falls within the electors' decision-making process, and within that of Congress, to whom responsibility for selecting a President falls when a candidate selected by the Electoral College "shall [not] have qualified."  *See* U.S. Const. amend. XX, § 3.  "None of these provisions evince an intention for judicial reviewability" of the decisions by the coordinate branches, and so Taitz's challenge to the President's eligibility for office is nonjusticiable.[8]  *Kerchner*, 669 F. Supp. 2d at 483 n.5.

### B.  Taitz's RICO Claim Should Be Dismissed As Duplicative And Without Merit

Finally, Taitz attempts to state a claim under RICO.  She contends that each defendant (except Secretary Sebelius) was somehow engaged in fraud aimed to ensure the election and/or continued service of President Obama, despite his alleged ineligibility to serve as president.  Compl. ¶¶ 30-37, 43.  She further contends that the President committed fraud by releasing his birth certificate, and through other actions taken in response to individuals like Taitz.  *Id.* ¶¶ 38-41.  The Court need not, and should not, consider Taitz's RICO claim, because she has already presented it to another court.  Moreover, her claim is wholly without merit.

---

[8] The textual assignment of these questions to the political branches is no accident: it serves the important need of finality in the nation's lawful quadrennial transfer of power.  As the D.C. Circuit explained in different circumstances, the political question doctrine is often demanded by "the need for finality."  *Nixon v. United States*, 938 F.2d 239, 243 (D.C. Cir. 1991), *aff'd*, 506 U.S. 224 (1992).  Otherwise, "the intrusion of the courts would expose the political life of the country to months, or perhaps years, of chaos.

### 1.   Taitz Is Already Litigating a Virtually Identical Claim in Another Court

"The cases are legion that a party may not institute new actions duplicating existing litigation." *Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) (collecting cases). *See also WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously.").   "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007).   In assessing whether a case is precluded by an earlier-filed case, the question "is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002).   *See also id.* at 987 ("It is clear that a motion to dismiss based on improper claim-splitting need not – indeed, often cannot – wait until the first suit reaches final judgment.").

Taitz's RICO claim should not go forward here because she is already litigating a virtually identical claim in *Taitz v. Democrat [sic] Party of Mississippi*, Case No. 3:12-cv-00280 (S.D. Miss.).   In Mississippi, Taitz originally sued in state court on February 14, 2012, six months before filing this case.   (The case was removed to federal court on April 24, 2012.) Taitz's First Amended Complaint, attached here as Exhibit 2, includes RICO claims that mirror her claims here.   As demonstrated in a chart attached as Exhibit 3, the RICO claim in this case is essentially a carbon copy of the earlier claim.   The claims share allegations, defendants, exhibits, and even typographical errors, and despite their minor differences a final resolution in one case

would have preclusive effect in the other.[9]  This is a classic example of a plaintiff trying to

present identical claims simultaneously to different courts.  As the second recipient of her claim,

the Court should dismiss Taitz's complaint.

### 2. Taitz's RICO Claim Is Wholly Without Merit, As She Fails to Allege Basic Required Elements of a Viable Claim

If the Court does, however, review Taitz's RICO claim, the claim should be dismissed

under Rule 12(b)(6).  "In order to state a claim under 18 U.S.C. § 1962, a plaintiff must allege: 1)

the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity."  *Elliott v.*

*Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  A plaintiff must also show that she was "injured in

[her] business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).

Taitz's complaint fails even to allege most of these elements, and is lacking in the detail

and specificity required to state a claim under RICO.  She claims there is a "pattern of

racketeering activity within the meaning of 18 U.S.C. § 1962(c), in that their common purpose

was to defraud."  Compl. ¶ 46.  But she does not claim that the defendants were involved in an

"enterprise" or that she suffered any economic injury attributable to the defendants' conduct.

She thus has no actionable claim as a matter of law.[10]

First, Taitz fails to allege that the defendants acted as part of an "enterprise."  To plead

this element, she must allege that the defendants were part of "a group of persons associated

---

[9] Even the Mississippi case is not, however, Taitz's first attempt to bring a RICO claim against President Obama.  In *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010), the court dismissed a similar RICO claim under Rule 12(b)(6).  The court noted that she had failed to identify anything that could qualify as "racketeering activities" under 18 U.S.C. § 1961(a), and that she had also failed to sufficiently plead her claims of fraud.  *Id.* at 6.  The underlying theory of fraud concerning the President's eligibility results in substantial overlap between her claims, but the Court need not even consider whether res judicata applies on the basis of the D.C. decision given that her claim here is essentially identical to her claim in the Mississippi case.

[10] To be sure, Taitz's allegations regarding the defendants' conduct and pattern of alleged racketeering activity are also inadequate to state actionable claims.  Nonetheless, given the more glaring facial deficiencies in her claim, the Court need not reach those elements.

together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556

U.S. 939, 944 (2009).  To constitute an enterprise, the group must have "structure," i.e., it must

have "a purpose, relationships among those associated with the enterprise, and longevity

sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.  Taitz has

alleged no such enterprise.  Beyond the conclusory use of the term "cover up," she does not

describe actions taken in concert or any other circumstances that would even allow one to infer

that there was a shared purpose and relationship between members of a group so diverse as to

include the Commissioner of Social Security, the director of the Selective Service, and officials

of a state political party.  At most, Taitz's complaint alleges that several individuals each acted

independently, rather than as part of an enterprise.

Second, Taitz does not allege that she suffered a cognizable economic injury.  To state a

claim, Taitz must allege that she was "injured in [her] business or property by reason of a

violation of section 1962." 18 U.S.C. § 1964(c).  Taitz contends that she "suffered defamation

and humiliation, endured multiple death threats and sanctions, while she was telling the truth."

Compl. ¶ 54.  She goes on to say that she "suffered damages of emotional distress, financial

damages, defamation, slander, harassment as a direct result of the actions by the Defendants."

*Id.* ¶ 55.  But none of these claimed injuries is cognizable under RICO.  They do not constitute

"concrete financial loss," *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001),

with the possible exception of "financial damages," but even that is plead in a conclusory manner

with no explanation of what the loss entailed.  Moreover, such claimed injuries were not

"proximately caused by a pattern of racketeering activity violating Section 1962 or by individual

RICO predicate acts." *Jones v. Enterprise Rent A Car Co. of Tex.*, 187 F. Supp. 2d 670, 676

(S.D. Tex. 2002).  While Taitz alleges that the defendants committed fraud in ensuring the

election and service of President Obama, she claims that her injuries were caused by supporters

of the President who were, in her view, uncomfortable that "she was telling the truth."  Compl.

¶ 54.  Such actions are not fairly traceable to the actions by the defendants here, nor would any

such injury be "by reason of a violation of section 1962."  *See* 18 U.S.C. § 1964(c).

Taitz thus has not alleged the elements necessary to show a violation of RICO, and her

claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Taitz has failed to establish the jurisdiction of this Court,

failed to show an entitlement to preliminary relief, and failed to state any claim against the

Federal Government Defendants upon which relief may be granted.  Her motion should be

denied and her complaint should be dismissed.

Dated:  September 20, 2012.          Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

SHEILA M. LIEBER
Deputy Director, Federal Programs Branch

*/s/ Scott Risner*
SCOTT RISNER (MI Bar #P70762)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-2395
Facsimile:  (202) 616-8470
E-mail: scott.risner@usdoj.gov

Attorneys for Federal Government Defendants

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 20, 2012, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the Court's electronic case filing system.  That system sends a "Notice of Electronic Filing" to the following *pro se* plaintiff:

Orly Taitz
29839 Santa Margarita Parkway, Suite 100
Rancho Santa Margarita, CA 92688

*/s/ Scott Risner*
Scott Risner